**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

**B.M., a minor,**
by and through her parents and next friends,
**HEATHER JUHRING and**
**NICHOLAS MILLER**
7 East Broad Street, Apt. A
Gibbstown, New Jersey 08027

and

**HEATHER JUHRING, individually**
7 East Broad Street, Apt. A
Gibbstown, New Jersey 08027

and

**NICHOLAS MILLER, individually**
414 Caicos Drive
Punta Gorda, Florida 33950

Plaintiffs,

v.

**TRINITY EVANGELICAL LUTHERAN CHURCH OF JOPPA, MARYLAND**
a Maryland religious, nonstock corporation
d/b/a Trinity Lutheran Christian School &
Early Learning Center
1100 Philadelphia Road
Joppa, Maryland 21085-3299
(Harford County)

SERVE: LORI A. HINMAN
1100 PHILADELPHIA ROAD
JOPPA MD 21085-3299

Defendant.

Civil Action No.: 1:26-cv-04436

**COMPLAINT AND JURY TRIAL DEMAND**

COME NOW, Plaintiffs B.M., a minor, by and through her parents and next friends, Heather Juhring and Nicholas Miller, and Heather Juhring and Nicholas Miller, individually, by their undersigned counsel, and sue Defendant Trinity Evangelical Lutheran Church of Joppa, Maryland, and for cause state as follows:

## INTRODUCTION

1. This is an action for damages arising from the sexual abuse of Plaintiff B.M., then a four-year-old child, by one or more of her classmates while she was in the care, custody, and supervision of Defendant's licensed childcare center, Trinity Lutheran Christian School & Early Learning Center, in Joppa, Maryland.

2. On or about October 26, 2023, B.M.'s father witnessed several children attempting to pull down B.M.'s pants on the Center's playground and immediately reported it to the Center. Rather than investigate, increase supervision, or protect B.M., Defendant minimized the incident and suggested that B.M. was to blame.

3. Approximately one month later, on November 27, 2023, the Center's own classroom cameras recorded one of the children involved in the October 26 incident committing 14 separate sexual acts against another child over more than 20 minutes, while the staff responsible for that classroom had their backs turned or were on their cell phones. The Maryland State Department of Education, Office of Child Care, found the Center out of compliance with seven childcare regulations and issued an emergency suspension of the Center's license.

4. As a direct and proximate result of Defendant's failures, B.M. has suffered, and continues to suffer, severe emotional and psychological injury, including developmental regression and sexualized behaviors, and requires specialized trauma treatment.

**JURISDICTION AND VENUE**

5. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States. Plaintiff Heather Juhring is a citizen of New Jersey, Plaintiff Nicholas Miller is a citizen of Florida, and Plaintiff B.M. is a citizen of New Jersey. Under 28 U.S.C. § 1332(c)(2), B.M.'s parents, suing as her next friends, are deemed citizens of the same state as B.M. Defendant is incorporated under the laws of Maryland and maintains its principal place of business in Maryland, and is therefore a citizen of Maryland under 28 U.S.C. § 1332(c)(1). No Plaintiff is a citizen of Maryland.

6. This Court has personal jurisdiction over Defendant under Federal Rule of Civil Procedure 4(k)(1)(A) because Defendant is incorporated under the laws of Maryland and maintains its principal place of business in Maryland, and is therefore subject to general personal jurisdiction in this District. *See* Md. Code Ann., Cts. & Jud. Proc. § 6-102(a); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (holding place of incorporation and principal place of business are sufficient basis for personal jurisdiction consistent with due process).

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in Harford County, Maryland, within this District.

**PARTIES**

8. Plaintiff B.M. is a minor child, born in 2019, who resides with her mother in Gibbstown, Gloucester County, New Jersey, and is a citizen of New Jersey. At all relevant times, B.M. was enrolled in, and in the care and custody of, the Center. B.M. brings this action by and through her parents and next friends, Heather Juhring and Nicholas Miller.

9. Plaintiff Heather Juhring is B.M.'s mother and natural guardian and resides at 7 East Broad Street, Apt. A, Gibbstown, Gloucester County, New Jersey 08027, and is a citizen of New Jersey. She sues as B.M.'s next friend and individually.

10. Plaintiff Nicholas Miller is B.M.'s father and natural guardian and resides at 414 Caicos Drive, Punta Gorda, Charlotte County, Florida 33950, and is a citizen of Florida. He sues as B.M.'s next friend and individually.

11. Defendant Trinity Evangelical Lutheran Church of Joppa, Maryland ("Defendant" or "Trinity") is, upon information and belief, a Maryland religious nonstock corporation with its principal office at 1100 Philadelphia Road, Joppa, Harford County, Maryland 21085-3299.

12. At all relevant times, Defendant owned, operated, managed, staffed, and controlled Trinity Lutheran Christian School & Early Learning Center (the "Center"), located at 1100 Philadelphia Road, Joppa, Maryland 21085. Upon information and belief, the Center was a childcare center licensed by the Maryland State Department of Education, Office of Child Care ("OCC"), under COMAR Title 13A, Subtitle 16, and was not a separate legal entity.

13. At all relevant times, Defendant acted through its agents, servants, and employees, including the directors, teachers, aides, and other staff of the Center, each of whom acted within the scope of his or her agency and employment.

14. Upon information and belief, at all relevant times Defendant maintained a policy of liability insurance covering the claims asserted in this Complaint. Under Md. Code Ann., Ins. § 19-103, Defendant's insurer may not raise charitable immunity as a defense to any claim covered by that policy.

## FACTS COMMON TO ALL COUNTS

### A. Defendant's Duties to the Children in Its Care

15. Defendant held the Center out to parents as a safe environment for young children and, upon information and belief, accepted tuition in exchange for the care, custody, and supervision of children, including B.M.

16. By accepting custody of B.M., a young child unable to protect herself, Defendant entered into a special relationship with B.M. and assumed a duty to exercise reasonable care to protect her from foreseeable harm, including harm inflicted by other children.

17. As the operator of a licensed childcare center, Defendant was required by Maryland regulation, among other things, to:

(a) ensure the safety and security of each child at all times;

(b) ensure that each child receives attention to individual needs and adequate supervision and care at all times;

(c) ensure that each staff member providing care to a child is oriented to the child's individual care needs and prepared to provide appropriate individual care;

(d) ensure that no operator, employee, or other individual connected with the Center subjects a child to abuse, neglect, mental injury, or injurious treatment;

(e) assign qualified childcare teachers to each group of children as needed to meet group size and staffing requirements; and

(f) ensure that staff assigned to a group on the playground remain among the children so that they can intervene immediately if necessary.

18. These regulations were adopted to protect children in licensed childcare, a class that includes B.M., from the type of harm B.M. suffered.

**B. The October 26, 2023 Playground Incident and Defendant's Response**

19. On or about October 26, 2023, when Mr. Miller arrived at the Center to pick up B.M., he witnessed several children on the Center's playground attempting to pull down B.M.'s pants. One of the students involved will be referred to as Student 1 throughout.

20. Upon information and belief, no Center staff member was positioned among the children close enough to observe the conduct or to intervene immediately.

21. Mr. Miller immediately reported the incident to Center staff.

22. Defendant did not respond appropriately. Instead, Defendant minimized the incident and incorrectly suggested that B.M. was to blame.

23. Upon information and belief, following Mr. Miller's report, Defendant did not investigate the incident; did not identify or address the conduct of the children involved; did not increase supervision of B.M. or her classmates; did not notify other parents; did not report the incident to the OCC; and did not implement any safety plan to protect B.M.

24. Upon information and belief, the October 26, 2023 incident was not the first time Student 1 targeted B.M. While in Defendant's care, B.M. was subjected to sexual misconduct by Student 1 on occasions prior to and including October 26, 2023, which Defendant's staff failed to observe, prevent, or report.

25. Upon information and belief, before October 26, 2023, Defendant knew or should have known that Student 1 had engaged in sexual misconduct toward B.M. and other children at the Center, and that Student 1 posed a risk of harm to other children in its care.

**C. The November 27, 2023 Classroom Assault**

26. On November 27, 2023, the Center's classroom cameras recorded Student 1 sexually assaulting another child ("Child A") in a Center classroom.

27. The video captured 14 separate sexual acts by Student 1 against Child A over a period of more than twenty minutes.

28. Throughout the assault, the Center staff responsible for the classroom were not monitoring the children; they had their backs turned or were on their cell phones. According to the OCC, staff members were on their phones for 17 minutes during the abuse.

29. The classroom's teacher had left for the day, leaving two aides who were not qualified childcare teachers in charge of the children.

30. Student 1 was among the children who had engaged in sexualized conduct toward B.M. before November 27, 2023.

31. That Student 1 could commit 14 sexual acts against a classmate over more than 20 minutes without intervention by staff shows that Defendant's supervisory failures were systemic.

**D. The OCC Investigation and Emergency Suspension**

32. The OCC investigated the Center. In a report dated December 24, 2023, Beth O'Connor, Regional Manager of the OCC for Region 11 (Cecil and Harford Counties), found the Center out of compliance with seven COMAR regulations, including by failing to:

(a) ensure the safety and security of each child;

(b) ensure that each child receives attention to individual needs;

(c) ensure that each child receives adequate supervision and care;

(d) ensure that each staff member provides care to a child for the child's individual care needs;

(e) ensure that each staff member providing care to a child is prepared to provide appropriate individual care;

(f) ensure that an employee does not subject a child to abuse, neglect, mental injury, or injurious treatment; and

(g) assign a qualified childcare teacher to each group of children as needed to meet group size and staffing requirements.

33. The OCC issued an emergency suspension of the Center's license "to protect the health, safety, or welfare of children in your care."

34. Upon information and belief, before November 27, 2023, other instances of peer-on-peer sexual misconduct occurred at the Center that Defendant failed to address, document, or report.

**E. B.M.'s Injuries**

35. As a result of the abuse, B.M. regressed in her toilet training and began wetting herself.

36. B.M. began exhibiting learned sexualized behavior, including genital rubbing.

37. B.M.'s sexualized behavior has extended to other children, including pressuring her cousins to remove their clothes in her presence. As a result, B.M. cannot be permitted to spend time alone with her cousins.

38. B.M.'s parents enrolled her in pediatric psychological counseling. Her therapist has referred her to the Child Abuse Research Education and Services (CARES) Institute at Rowan University for evaluation and a targeted treatment plan.

39. Young children who are sexually abused are at significantly increased risk of lasting harm, including post-traumatic stress disorder, anxiety, depression, sexual behavior problems, attachment insecurity, and relational and behavioral difficulties.

40. As a direct and proximate result of Defendant's negligence, B.M. has suffered and will continue to suffer severe emotional distress, mental anguish, psychological injury, developmental harm, and loss of enjoyment of life, and will require therapeutic, medical, educational, and related care into adulthood.

41. As a direct and proximate result of Defendant's negligence, B.M.'s parents have incurred, and will continue to incur, expenses for B.M.'s medical, psychological, and therapeutic care during her minority.

42. B.M. did nothing to cause or contribute to her injuries.

## COUNT I
## NEGLIGENCE

(Plaintiff B.M., by and through her parents and next friends, against Defendant)

43. Plaintiff B.M. sues Defendant for cause, claim, and damages, and adopts and incorporates by reference the allegations in the Facts Common to All Counts as if fully set forth here.

44. Defendant owed B.M. a duty to exercise reasonable care to supervise her and to protect her from reasonably foreseeable harm, including sexual misconduct by other children. That duty was heightened by B.M.'s young age, her dependence on Defendant, and Defendant's custody of her.

45. The harm to B.M. was reasonably foreseeable, including because of Mr. Miller's October 26, 2023 report and, upon information and belief, prior incidents of peer-on-peer sexual misconduct at the Center.

46. Defendant breached its duty of care by, among other things:

(a) failing to adequately supervise B.M. and the other children in her classroom and on the playground;

(b) failing to position staff among the children on the playground so that they could intervene immediately;

(c) failing to investigate, respond to, or act upon Mr. Miller's October 26, 2023 report;

(d) blaming B.M. for the October 26, 2023 incident rather than protecting her;

(e) failing to increase supervision or implement a safety plan after receiving notice of sexualized conduct directed at B.M.;

(f) permitting staff to use cell phones while responsible for supervising children;

(g) leaving groups of children under the supervision of aides who were not qualified childcare teachers;

(h) failing to adopt and enforce policies to prevent, detect, report, and respond to sexualized behavior between children;

(i) failing to train staff to recognize and respond to sexualized behavior between children;

(j) failing to notify parents of sexualized conduct occurring at the Center; and

(k) failing to comply with the regulations identified in Paragraph 17.

47. Defendant's violations of COMAR 13A.16.07.01, 13A.16.07.06A, 13A.16.08.01A–B, 13A.16.08.02B, and 13A.16.08.07A — regulations adopted to protect children in licensed childcare, a class that includes B.M., from the type of harm B.M. suffered — are evidence of Defendant's negligence.

48. As a direct and proximate result of Defendant's negligence, B.M. suffered the injuries and damages described above.

WHEREFORE, Plaintiff B.M., by and through her parents and next friends, Heather Juhring and Nicholas Miller, respectfully prays that this Court grant her the following:

A. Award B.M. economic and non-economic compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

B. Award B.M. all pre-judgment and post-judgment interest allowed by law;

C. Award B.M. reasonable costs; and

D. Award B.M. any other such relief this Court deems just and proper.

## COUNT II
## NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION

(Plaintiff B.M., by and through her parents and next friends, against Defendant)

49. Plaintiff B.M. sues Defendant for cause, claim, and damages, and adopts and incorporates by reference the allegations in the Facts Common to All Counts as if fully set forth here.

50. Defendant owed B.M. a duty to use reasonable care in selecting, training, supervising, and retaining the staff to whom it entrusted the care of young children.

51. Defendant knew or, in the exercise of reasonable care, should have known that the staff assigned to B.M.'s classroom and to the playground were unqualified, inadequately trained, and inattentive, as shown by, among other things, their use of cell phones while supervising children, the practice of leaving classrooms under the supervision of unqualified aides, their failure to remain among the children on the playground, and their failure to respond appropriately to Mr. Miller's October 26, 2023 report.

52. Defendant breached its duty by, among other things:

(a) failing to employ qualified childcare teachers in sufficient numbers to supervise each group of children;

(b) failing to train staff on child supervision and on recognizing, preventing, reporting, and responding to sexualized behavior between children;

(c) failing to supervise and monitor staff, including through available classroom video;

(d) failing to retrain, discipline, or reassign staff after the October 26, 2023 incident; and

(e) retaining staff whom it knew or should have known were unfit to supervise young children.

53. As a direct and proximate result of Defendant's negligent hiring, training, supervision, and retention, B.M. suffered the injuries and damages described above.

WHEREFORE, Plaintiff B.M., by and through her parents and next friends, Heather Juhring and Nicholas Miller, respectfully prays that this Court grant her the following:

A. Award B.M. economic and non-economic compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

B. Award B.M. all pre-judgment and post-judgment interest allowed by law;

C. Award B.M. reasonable costs; and

D. Award B.M. any other such relief this Court deems just and proper.

**COUNT III**
**VICARIOUS LIABILITY (RESPONDEAT SUPERIOR)**
(Plaintiff B.M., by and through her parents and next friends, against Defendant)

54. Plaintiff B.M. sues Defendant for cause, claim, and damages, and adopts and incorporates by reference the allegations in the Facts Common to All Counts as if fully set forth here.

55. At all relevant times, the Center's director, teachers, aides, and other staff were Defendant's employees and agents, acting within the scope of their employment and agency.

56. Those employees and agents owed B.M. a duty to exercise reasonable care in supervising and protecting her and breached that duty by the acts and omissions described in Paragraphs 46(a) through 46(g) and 46(j).

57. Defendant is vicariously liable for the negligent acts and omissions of its employees and agents committed within the scope of their employment and agency.

58. As a direct and proximate result of the negligence of Defendant's employees and agents, B.M. suffered the injuries and damages described above.

WHEREFORE, Plaintiff B.M., by and through her parents and next friends, Heather Juhring and Nicholas Miller, respectfully prays that this Court grant her the following:

A. Award B.M. economic and non-economic compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

B. Award B.M. all pre-judgment and post-judgment interest allowed by law;

C. Award B.M. reasonable costs; and

D. Award B.M. any other such relief this Court deems just and proper.

## COUNT IV
## NEGLIGENCE (PRE-MAJORITY MEDICAL EXPENSES)

(Plaintiffs Heather Juhring and Nicholas Miller, individually, against Defendant)

59. Plaintiffs Heather Juhring and Nicholas Miller sue Defendant for cause, claim, and damages, and adopt and incorporate by reference the allegations in the Facts Common to All Counts and in Counts I through III as if fully set forth here.

60. As B.M.'s parents, Plaintiffs are legally responsible for providing B.M.'s necessary medical care during her minority and are entitled to recover the expenses of that care caused by Defendant's negligence.

61. As a direct and proximate result of the negligence of Defendant and its employees and agents described above, Plaintiffs have incurred and will continue to incur, until B.M. reaches the age of majority, expenses for B.M.'s medical, psychological, therapeutic, and related care.

WHEREFORE, Plaintiffs Heather Juhring and Nicholas Miller respectfully pray that this Court grant them the following:

A. Award Plaintiffs economic compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

B. Award Plaintiffs all pre-judgment and post-judgment interest allowed by law;

C. Award Plaintiffs reasonable costs; and

D. Award Plaintiffs any other such relief this Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all claims so triable pursuant to Federal Rule of Civil Procedure 38.

Dated: October 22, 2026

Respectfully submitted,

*/s/ Robert K. Jenner*

Robert K. Jenner (Bar No. 04165)
Kathleen R. Kerner (Bar No. 18955)
JENNER LAW, P.C.
3600 Clipper Mill Road, Suite 240
Baltimore, Maryland 21211
Phone: (410) 413-2155
Facsimile: (410) 982-0122
rjenner@jennerlawfirm.com
kkerner@jennerlawfirm.com

and

**GRANT & EISENHOFER, P.A.**
Steven J. Kelly (Bar No. 27386)
Elizabeth Bailey (*pro hac vice* forthcoming)
3600 Clipper Mill Road, Suite 240
Baltimore, Maryland 21211

Phone: (443) 531-1474
skelly@gelaw.com
ebailey@gelaw.com